IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| JASON WILLIAM WALL, | ) | |
| | ) | Bankruptcy No. 16-00763 |
| Debtor. | ) | |
| | ) | |

## RULING ON MOTION FOR SANCTIONS

This matter originally came before the Court on April 26, 2018. During the hearing, the Movant requested the Court to continue the matter to accommodate an expert witness. The Court granted the request and continued the hearing to October 31, 2018. Peter Arling of O'Connor & Thomas appeared at the October hearing for the Movant, unsecured creditor Kurt Burbach ("Burbach"). Joseph Peiffer of Ag & Business Legal Strategies appeared for Debtor Jason Wall ("Debtor").

## STATEMENT OF THE CASE

The matter arises in the context of a contentious history between Debtor, Jason Wall, and Movant, Kurt Burbach. Wall had joined Burbach's chiropractic practice in Dyersville, Iowa, and agreed to buy into the practice. The buy-in fell apart and resulted in bitter litigation between the parties in State court. That litigation resulted in a $585,731 judgment for Burbach.

Debtor filed for bankruptcy on June 16, 2016 seeking to discharge his debts
to Burbach and all his other creditors.  Burbach filed Adversary Case No. 17-9032
objecting to Debtor's discharge under 11 U.S.C. § 727 on the grounds that
Debtor's petition and schedules contained numerous false statements and
drastically understated his assets and income.  After many extensions of the
deadline to file an answer, Debtor chose not to answer.  The Court entered a
default judgment denying Debtor a discharge.

Burbach then brought this motion for sanctions.  Burbach asks the Court to
sanction Debtor for his false statements in his bankruptcy filings, his meritless
Motion to Convert his case to Chapter 13, and his unreasonable delays in
requesting extensions and failure to timely respond to discovery requests.  As a
sanction for this conduct, Burbach asks the Court to require Debtor to pay
Burbach's fees and expenses, totaling $150,127.22.

## FINDINGS OF FACT

Debtor and Burbach have a long and difficult history.  Their relationship
soured after a deal for Debtor to buy into Burbach's chiropractic practice fell apart.
The breach of contract litigation in State court, resulting in a judgment of
$585,731, made the relationship all the more bitter.

In response to Debtor's bankruptcy filing, Burbach conducted extensive
discovery, requested thousands of pages of documents from Debtor, spent

2

hundreds of hours reviewing documents, accrued over $130,000 in attorney fees, and also incurred thousands of dollars in costs for his hiring forensic accountant Shannon Shaw. Burbach and Shaw testified at the hearing about the inconsistences between the income shown in Debtor's internal financial documents and the income he reported on his tax returns, and in his bankruptcy petition and schedules. The evidence was substantial and raised many questions and concerns.

Instead of responding, Debtor asserted his Fifth Amendment right against self-incrimination. Debtor declined to put on any other direct or affirmative evidence to rebut Burbach's evidence. Debtor's attorney did cross examine Burbach and Shaw.

Based on this record, the Court finds that Debtor engaged in improper conduct in this bankruptcy case. Debtor appears to have intentionally understated his income in filings to the Court. Debtor engaged in a pattern of delay and misdirection that is not acceptable in bankruptcy proceedings—or any other proceedings. Burbach was unnecessarily required to conduct discovery and incur legal and accounting costs to preserve his own rights and properly pursue his adversary seeking to deny Debtor a discharge. By the time Debtor had decided not to file an answer, Burbach had incurred many of those unnecessary expenses.

The Court also finds, however, that the amount of time and energy Burbach put into this matter was far beyond what was reasonable and necessary to establish

a denial of discharge.  Burbach's commitment to this case and the level of

investigation he undertook were driven in part by personal animosity and

frustration.  The Court finds that the amount of time and energy to put into a matter

is largely up to the judgment of the parties involved.  However, the Court must

determine what amount of time and fees were reasonably **necessary** when a party

seeks fees as a sanction.

## ANALYSIS

Burbach's Motion asks the Court to impose sanctions on Debtor under all of

the following authorities: Bankruptcy Rule 9011, 11 U.S.C. § 105, and the Court's

inherent power.  The Court has immense discretion when it comes to issuing

sanctions.  If the Court choses to sanction Debtor, it may do so under any of the

sources of authority referenced above.  However, "[a] sanctioning court should

ordinarily rely on available authority conferred by statutes and procedural rules,

rather than its inherent power, if the available sources of authority would be

adequate to serve the court's purposes."  In re Rimsat, Ltd., 212 F.3d 1039, 1048

(7th Cir. 2000) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991); Corley

v. Rosewood Care Ctr., Inc. of Peoria, 142 F.3d 1041, 1058–59 (7th Cir. 1998)).

In other words, a bankruptcy court should first look to the sanctioning authority

provided in Rule 9011, but if the conduct at issue cannot be adequately addressed

under that rule, it may turn to § 105(a) or its inherent powers.  In re Rainbow

4

<u>Magazine</u>, 77 F.3d 278, 284–85 (9th Cir. 1996); <u>Geraci v. Bryson</u> (<u>In re Bryson</u>),

131 F.3d 601, 603 (7th Cir.1997).

The Court concludes that Rule 9011 is applicable to Debtor's actions in this

case and that the sanctions available under Rule 9011 are sufficient to deter future

similar conduct.  As such, the Court declines to resort to § 105 or its inherent

powers.

## I.    Rule 9011

Rule 9011 provides that every paper presented to the Court must be signed

by either an attorney or a party depending on the document.  Fed. R. Bankr. P.

9011(a).  It further provides:

> (b) Representations to the court
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary

support after a reasonable opportunity for further investigation or
discovery; and

(4) the denials of factual contentions are warranted on the evidence or,
if specifically so identified, are reasonably based on a lack of
information or belief.

Fed.R.Bankr.P. 9011(b).  Rule 9011(c) allows bankruptcy courts to impose

sanctions for violations of Rule 9011(b):

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court
determines that subdivision (b) has been violated, the court may,
subject to the conditions stated below, impose an appropriate sanction
upon the attorneys, law firms, or parties that have violated subdivision
(b) or are responsible for the violation.

Fed.R.Bankr.P. 9011(c).

"The language of Rule 9011 is almost identical to Fed.R.Civ.P. 11, and case

law interpreting Rule 11 applies to Rule 9011 cases." In re Young, 789 F.3d 872,

879 (8th Cir. 2015) (citing Grunewaldt v. Mut. Life Ins. Co. (In re Coones Ranch,

Inc.), 7 F.3d 740, 742 n. 4 (8th Cir. 1993)).  Rule 11 was amended in 1993 to add a

"safe harbor" provision that allowed a party to withdraw an objectional pleading

within 21 days and avoid sanction.  Bankruptcy Rule 9011 was amended in 1997 to

add an identical "safe harbor" provision.  Notably, however, the Rule 9011 safe

harbor provision "shall not apply if the conduct alleged is the filing of a

petition. . .."  Fed.R.Bankr.P. 9011(c)(1)(A).  The advisory committee note to the

1997 amendment states that petitions are specifically excluded from the safe harbor

6

provisions because "[t]he filing of a petition has immediate serious consequence, including the imposition of the automatic stay under § 362 of the Code, which may not be avoided by the subsequent withdrawal of the petition. . .." Fed.R.Bankr.P. 9011 advisory committee note (1997).

### a. Applicability of Rule 9011 to Represented Parties

The vast majority of 9011 sanctions actions are against attorneys and law firms. Here, Burbach has moved for sanctions against Debtor alone. Courts are divided as to whether a debtor who was represented by counsel may be sanctioned personally under Rule 9011. See In re David, 487 B.R. 843, 869 (Bankr. S.D. Tex. 2013); In re Collins, 250 B.R. 645, 660–61 (Bankr. N.D. Ill. 2000). No court in the Eighth Circuit has ruled on this issue.

The question of Rule 9011's applicability to represented parties arises in the language of Rule 9011(b), which states: "By presenting [a document] to the court. . . **an attorney or unrepresented party** is certifying that to the best of the person's knowledge. . .." Fed.R.Bankr.P. 9011(b) (emphasis added). On its face, it seems that only attorneys and unrepresented parties can make a certification that a document meets the requirements of Rule 9011(b).

Rule 9011(b) requires a certification. Part (c) of 9011 provides that the punishment for making a certification not supported by evidence is sanctions. Since only an attorney or unrepresented party may make a certification, it is

7

certainly arguable that only an attorney or unrepresented may be sanctioned for making a false certification. One bankruptcy court has adopted this reasoning, finding that represented parties may not be sanctioned under Rule 9011. In re David, 487 B.R. at 869 (the court instead sanctioned the debtor pursuant to 11 U.S.C. § 105 and its inherent powers).

The Court agrees with the David court that only attorneys and unrepresented parties may make the certifications mandated by Rule 9011(b), but it does not agree that only attorneys and unrepresented parties may be sanctioned under Rule 9011. Rule 9011(c) states that a court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) **or are responsible for the violation**." Fed.R.Bankr.P. 9011(c) (emphasis added).

Rule 9011(c) provides two groups that may be sanctioned: (1) the person who actually made the violating certification under subdivision (b), and (2) the person who is responsible for the violation. As established above, only an attorney or unrepresented party may fall into the first group because they are the only ones who may make a certification under 9011(b). The second group, however, encompasses a wider set of actors. The advisory committee note to Federal Rule of Civil Procedure 11, which is identical to Rule 9011 in relevant part, made clear that a represented party may be sanctioned when they are found to be the person responsible for a false certification.

8

> [Rule 11(c)] permits the court to consider whether other attorneys in
> the firm, co-counsel, other law firms, or the party itself should be held
> accountable for their part in causing a violation. When appropriate,
> the court can make an additional inquiry in order to determine
> whether the sanction should be imposed on such persons, firms, or
> parties either in addition to or, in unusual circumstances, instead of
> the person actually making the presentation to the court.

Fed.R.Civ.P. 11 advisory committee note (1993).

Another provision of Rule 9011(c) further supports the conclusion that

represented parties may be sanctioned under Rule 9011.  Subsection (A) of Rule

9011(c)(2), which provides guidance on the nature and extent of sanctions, states:

"Monetary sanctions may not be awarded against a represented party for a

violation of subdivision (b)(2)."  Subdivision (b)(2) provides that legal contentions

within documents submitted to the court must be "warranted by existing law or a

nonfrivolous argument for the extension, modification, or reversal of existing

law. . .."  Since monetary sanctions are disallowed against represented parties for

violations of Rule 9011(b)(2), it follows that monetary sanctions are allowed

against represented parties for violations Rule 9011(b)(1), (3), and (4).

One court followed this reasoning when it imposed sanctions on a debtor as

the party responsible for a Rule 9011(b) violation.  In re Collins, 250 B.R. 645,

660–61 (Bankr. N.D. Ill. 2000).  This Court concludes that the reasoning of

Collins, holding that courts may levy sanctions against a represented party if it

finds the party is responsible for a violation of Rule 9011(b), is persuasive.  This Court thus follows and applies that reasoning here.

## II.     Rule 9011 Sanctions Against Debtor are Warranted

Having determined that the Court may impose sanctions on Debtor individually, it must now determine what acts, if any, violated Rule 9011(b) and whether Debtor was responsible for those violations such that sanctions are warranted.  Burbach argues Debtor violated either Rule 9011(b)(1) by presenting pleadings and documents for an "improper purpose, such as to harass or to cause unnecessary delay," or Rule 9011(b)(3) by presenting documents that contain factual contentions without evidentiary support.

Burbach presented a long list of Debtor's alleged wrongdoings to support recovery under those sections.  These alleged wrongdoings can be grouped into three basic categories: (1) false statements of assets and income on Debtor's petition and schedules; (2) Debtor's meritless attempt to convert his case to Chapter 13; and (3) Debtor's multiple requests to extend deadlines in the Adversary proceeding and Debtor's untimeliness in responding to subpoenas and discovery requests.  The Court must examine Debtor's actions in each of these categories to determine if Debtor was responsible for any Rule 9011(b)(1) or (b)(3) violations.

### a. Debtor's False Statements on his Petition and Schedules

Burbach alleged that Debtor made many false statements and omissions regarding his income and assets in his bankruptcy petition and schedules. Burbach presented evidence of discrepancies between Debtor's internal financial documents and his reported income. Burbach also presented evidence that Debtor grossly under-reported his income on his tax returns by improperly classifying personal expenses as tax deductible business expenses and falsely reporting personal expenditures as charitable donations. Debtor chose to plead the Fifth Amendment in response to all substantive questions. Thus, Debtor has offered no response to Burbach's long list of accusations.

Unlike in criminal cases, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. . .." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). However, "silence alone would be insufficient to support an adverse decision against one who refuses to testify." Pagel, Inc. v. S.E.C., 803 F.2d 942, 947 (8th Cir. 1986) (citing Baxter, 425 U.S. at 317). A court may infer wrongdoing from a party's silence in a civil matter so long as the party's silence is not the sole basis for the court's findings. Id.

The Court does not need to make factual findings on every allegation Burbach put forward regarding Debtor's statement of income on his tax returns, or

11

his classification of deductions.   The only finding of fact necessary for the Court to

sanction is the truthfulness of Debtor's statements on his bankruptcy petition and

schedules.   The Court finds, based on the documentation put forward by Burbach

and Debtor's failure to respond, that Debtor's petition and schedules contain false

statements that are without evidentiary support.   Thus, the Court finds a violation

of Rule 9011(b)(3).

Although Debtor, as a represented party, did not violate Rule 9011(b)(3), he

was responsible for that violation.   He provided the false information to his

attorney knowing that the information would be reported on his bankruptcy

petition and schedules.   The Court finds that sanctions against Debtor, as the party

responsible for the Rule 9011(b)(3) violation, are warranted.

### b. Debtor's Attempt to Convert to Chapter 13

Debtor filed a Motion to Convert his Chapter 7 case to Chapter 13 on July

20, 2017.   Burbach objected to Debtor's Motion to Convert.   Debtor withdrew his

Motion on September 5, 2018, one day before the hearing scheduled on the matter.

Burbach argues that Debtor's attempt to convert to Chapter 13 was made to

improperly cause unnecessary delay in violation of Rule 9011(b)(1).   The Court

agrees.   Debtor has admitted that his unsecured debts exceed the limit set forth in

11 U.S.C. § 109(e) for being a Chapter 13 Debtor.   Debtor therefore did not qualify

as a "debtor" eligible to file under Chapter 13.   Debtor knew or should have known

12

that he did not qualify to file under Chapter 13 and that his Motion to Convert was

entirely improper. The Court finds that Debtor filed his Motion to Convert to

Chapter 13 for the improper purpose of unnecessarily delaying proceedings.

Debtor is responsible for the violation of Rule 9011(b)(1) and subject to sanctions

for this violation.

### c. Debtor's Requests for Extensions of Time and General Untimeliness in Responding to Discovery

Debtor filed four motions to extend time to file an answer to Burbach's

complaint in the Adversary Proceeding. Burbach alleges that Debtor's multiple

requests to extend time were simply an improper effort to unnecessarily delay

proceedings. The Court disagrees. The Court granted each of Debtor's extension

requests. Had the Court felt Debtor's motions for extension were needless and

without merit, the Court would not have granted them. The Court holds now, as it

did then, that Debtor's requests for additional time to file an answer were

warranted. Debtor changed attorneys part way through the adversary proceeding.

His new attorney needed, and requested, time to go over the extensive documents

in this case. The Court finds there was no violation of Rule 9011(b) in Debtor's

filing for motions for extension in the adversary.

The Court also notes that Burbach filed multiple requests for additional time

to file an objection to Debtor's discharge, all of which were granted. The Court

also allowed a continuance of the hearing on this sanctions matter to accommodate

13

Burbach's expert witness. The Court has been generous with both parties in allowing additional time where requested.

Burbach also claims that Debtor was untimely in responding to subpoenas and discovery requests and that this conduct is sanctionable. The Court does not find that there was any delay related to discovery that warrants sanctions in this case. Furthermore, Rule 9011 specifically states that it is not applicable to discovery. "Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 7026 through 7037." Fed. R. Bankr. P. 9011(d). Rules 7026 through 7037 govern discovery and provide for sanctions for violation of discovery rules. Rule 9011 does not apply to discovery documents that are not filed with the Court. The Court, therefore, will not consider Debtor's actions during discovery in ruling on this motion for sanctions under Rule 9011.

### III.  The Proper Measure of Sanctions

Burbach forcefully argues that his full attorney fees incurred in reviewing and prosecuting his case, in both the main bankruptcy and the adversary, are the proper measure of sanctions. Debtor, in his brief, argues that Burbach's Motion should be treated as a claim for fees and rejected because any such claim merged with the default judgment, which was entered by the Court without an award of fees. Both parties attempt to mischaracterize this action. A motion for sanctions is

14

not, and should not be used as, a fee-shifting statute. <u>Mars Steel Corp. v. Continental Bank N.A.</u>, 880 F.2d 928, 932 (7th Cir. 1989).

Whether to impose sanctions for a Rule 9011 violation and the type of sanction to be imposed is at the discretion of the Court. <u>In re MPX Tech., Inc</u>. 310 B.R. 453, 459 (Bankr. M.D. Fla. 2004). Bankruptcy courts have broad discretion in determining the appropriate measure of sanctions. <u>Braun v. Champion Credit Union</u> (<u>In re Braun</u>), 152 B.R. 466, 472 (N.D. Ohio 1993) (citing <u>INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.</u>, 815 F.2d 391, 401 (6th Cir. 1987).

Rule 9011(c)(2) provides guidance to the Court on how to determine the appropriate sanction:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Bankr.P. 9011(c)(2).

"A sanction under Rule [9011] should be the least severe that is adequate for deterrence." <u>Collins</u>, 250 B.R. at 667 (citing <u>Divane v. Krull Electric Co., Inc.</u>, 200 F.3d 1020, 1030 (7th Cir. 1999)). "The cornerstone of imposing a monetary sanction, however, should be the selection of an amount no greater than sufficient

15

to deter future misconduct by the party." In re Kujawa, 270 F.3d 578, 583 (8th Cir. 2001).

In cases where attorneys are sanctioned, courts have imposed both monetary sanctions and nonmonetary sanctions, such as suspending attorneys from appearing before the court. In re Young, 789 F.3d 872, 882 (8th Cir. 2015). Sanctions against debtors have primarily been monetary. In re Thompson, 165 B.R. 30, 32 (Bankr. M.D. Tenn. 1994); Collins, 250 B.R. at 667. The movant's reasonable attorney fees and expenses are one standard, reasonable measure of sanctions. Regardless of the type of sanctions the Court choses to impose, it must "consider the deterrent effect of the sanctions and the party's ability to pay." Thompson, 165 B.R. at 32 (citing Orlett v. Cincinnati Microwave, Inc., 954 F.2d 414, 420 (6th Cir. 1992)).

If the Court chooses to award the movant's fees as sanctions, it cannot simply grant the movant's full amount of fees and expenses without further inquiry. In re Rainbow Magazine, Inc., 136 B.R. 545, 555 (B.A.P. 9th Cir. 1992). The Court must examine the movant's fees and award only those it finds were reasonable necessary to combat the violative conduct. Id. If need be, the Court may substitute the movant's claimed fee with an amount it determines to be reasonable. In re Cedar Tide Corp., 164 B.R. 808, 818–19 (E.D. N.Y. 1994). "[T]he court must find that the actions for which fees are sought were reasonably

16

necessary to defend against the motions. A reasonableness inquiry necessarily requires a determination as to what extent plaintiff's expenses and fees could have been avoided and were self-imposed." INVST, 815 F.2d at 404.

The amount the Court determines to be a movant's reasonable attorney fees represents a ceiling on the amount it may require the sanctioned party to pay to the movant, not a floor. The Court is free to order a lower amount if it determines the movant's reasonable attorney fees are greater than what is necessary to deter similar future conduct. Kujawa, 270 F.3d at 583.

Burbach requests an award of his attorney fees, expert fees, lost wages, and other expenses totaling $150,127.22 as the sanction. This number includes $10,000 in expert fees, $5,353.68 in lost wages, $3,773.54 in miscellaneous expenses, and $131,000.00 in attorney fees. Burbach's attorneys, O'Connor & Thomas, P.C., filed an affidavit attesting to the time spent and fees charged for this case. Burbach also filed his attorney's detailed billing statement as an exhibit.

As stated above, the Court cannot simply grant Burbach's full fee claim as sanctions without further inquiry. Rainbow Magazine, 136 B.R. at 555. It must determine the amount of fees that were reasonable in light of Debtor's violative conduct. Id. The Court has concluded Debtor was responsible for two Rule 9011(b) violations: Debtor's improper attempt to convert his case to Chapter 13

17

and Debtor's false statements on his petition and schedules.  The Court now determines the proper sanction in relation to both of these violations.

### a. Sanction for Debtor's Attempt to Convert to Chapter 13

Debtor filed a Motion to Convert to Chapter 13 on July 21, 2017.  Burbach filed an objection and brief in support of his objection the next day.  Debtor withdrew his Motion to Convert on September 5, 2017, one day before the scheduled hearing on the motion.  Debtor sorted through Burbach's Exhibit 1, the O'Connor & Thomas billing statement, and classified the entries based on the matter addressed in each time entry.  Debtor classifies 28 time entries as work spent on Burbach resisting Debtor's Motion to Convert, for a total of $19,481.50. Debtor's Exhibit 9.  Debtor argues that this amount was not reasonable.

Many of the 28 time entries Debtor highlights in his Exhibit 9 are block billed, so it is nearly impossible to properly determine what portion is for work on the Motion to Convert.  Burbach, for his part, has not attempted to attribute his $150,000 overall claim to particular theories of recovery.  While the Court cannot determine exactly how much time Burbach's attorneys spent resisting the Motion to Convert, it seems to be more than 60 hours.  The vast majority of that time was billed by Peter Arling, at $265 per hour.  At approximately 60 hours of time, this would put the amount of attorney fees attributable to resisting Debtor's Motion to Convert around $16,000 or more.

18

The actual amount of attorney fees Burbach incurred specifically resisting Debtor's Motion to Convert is not necessarily relevant as the Court awards only fees reasonably necessary.  Burbach's brief opposing Debtor's Motion to Convert is eleven pages long, the majority of which is spent on the issue of bad faith.  <u>Kurt V. Burbach's Brief in Opposition to Debtor's Motion to Convert Case to Chapter 13</u>, Bankr. No. 16-763, Dkt. No. 48.  Burbach's brief buried what should have been the conclusion of a much shorter brief on page five: "The inability to qualify as a debtor under the unsecured, non-contingent liquidated debt provisions of 11 U.S.C. § 109(e) on its own provides sufficient grounds to deny conversion."  <u>Id</u>. at *5.

Debtor did not qualify as a Chapter 13 "debtor" under 11 U.S.C. § 109(e) because he exceed the limit on unsecured debt.  The obviousness of Debtor's failure to qualify under Chapter 13 is precisely why his Motion to Convert violated Rule 9011(b)(1).  As the Court has noted, Debtor's motion was so clearly doomed to fail that the only logical purpose of filing it was to delay proceedings.  Resisting a motion that was so frivolous as to warrant sanctions, would not reasonably require over 60 hours of work.

Burbach submitted an eleven-page brief and filed 44 exhibits for the hearing on the Motion to Convert.  It appears to the Court that, like many of the proceedings and filings in this case, Burbach planned to use the hearing on the Motion to Convert as an opportunity to demonstrate all of Debtor's lies and bad

19

acts.  That was a tactical choice by Burbach and his counsel.  The Court does not find that tactical choice was "necessary" to resist the motion and declines to award 60 hours of legal time.

The Court finds that, at most, ten hours of billable time was necessary to resist Debtor's Motion to Convert.  The Court finds that Peter Arling's rate of $265 per hour was reasonable.  As such, the Court finds that $2,650 ($265 x 10) was the amount of attorney fees reasonably necessary to resist Debtor's Motion to Convert. This is the amount the Court awards as sanctions for Debtor's violation of Rule 9011(b)(1) by filing a frivolous motion to covert to Chapter 13.

### b.  Sanction for Debtor's False Statements on his Petition and Schedules

The Court has also concluded that Debtor knowingly made false statements regarding his assets and income on his bankruptcy petition and schedules.  The Court concluded that Debtor's petition and schedules violated Rule 9011(b)(3) and Debtor, as the person providing the false information, is responsible for that violation.

Burbach argues that Debtor's false statements made his entire bankruptcy filing fraudulent and in bad faith.  Burbach claims that his full $150,127.22 of expenses and fees, in the both the main bankruptcy case and the adversary, are the proper measure of sanctions for those false statements.

20

The Court declines to adopt Burbach's argument.  The record does not show that all fees Burbach accrued in this case were necessary to combat Debtor's false statements.  Burbach would almost certainly have incurred significant fees even if Debtor had been completely truthful on his petition and schedules.  A creditor that has a strong interest (like Burbach) in any bankruptcy proceeding will likely, at a minimum, pay the attorney to file a proof of claim, prepare for and attend a 341 meeting, and meet with the creditor-client to discuss the case.   Such ordinary expenses should not be included in a sanctions award.  Debtor's Exhibit 7 in fact identifies 55 time entries by Burbach's attorneys totaling $16,206.29 for "'normal' bankruptcy matters."  Debtor's Brief in Resistance, Doc. No. 73 at 11.

Burbach also expended considerable resources that were not directly aimed at bringing to light Debtor's false statements.  Debtor's Exhibits 5 and 11 highlight $33,000 worth of time entries spent working on a potential attempt to pierce the corporate veil or potentially convert Debtor's case to a Chapter 11.  These matters were not reasonably related to Debtor's Rule 9011(b) violation.

The Court already has found nearly $60,000 of the fees—attributable to bad faith arguments in the Chapter 13 conversion resistance, normal bankruptcy matters, piercing the corporate veil, and potentially converting to Chapter 11—are not awardable as sanctions.  Even assuming the majority of Burbach's $90,000 in remaining expenses were actually spent combating Debtor's Rule 9011 violation

related to his false statements, the amount Burbach actually spent does not

determine the award.  Only the amounts necessarily spent should be awarded here.

Burbach chose to expend an extraordinary amount of resources on this case.  He

spent many hours of his own time combing through documents.  He authorized his

attorney to pursue extensive discovery and pursue many varying legal theories.  He

hired forensic accountant Shannon Shaw to review all the documents and testify.

All of this was at great cost.

Burbach's approach to unearthing Debtor's false statements was his

choice—in consultation with counsel.  Again, as a strategic matter, or out of an

abundance of caution, a party can legitimately choose to do far more than is

necessary.  That is what the Court finds here.  The Court finds a certain amount of

discovery and attorney hours were necessary to bring to light Debtor's false

statements.  Presenting these issues for trial certainly would be legitimate and

necessary as well, but Burbach's claim for 618 hours of attorney time on this case

far exceeds what is necessary.

The Court will not review the fees line by line and determine which were

necessary.  The Court has wide discretion to set an overall number less than the

amount claimed.

The primary factor the Court considers in determining the appropriate

sanction is the deterrent effect.  The amount of sanctions should "be limited to

what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The primary aim of sanctions under Rule 9011 is to deter future bad acts, not compensate movants. "A sanction under Rule [9011] should be the least severe that is adequate for deterrence." Collins, 250 B.R. at 667 (citing Divane, 200 F.3d at 1030). Deterrence is an elusive goal in that it is difficult to say exactly what level of punishment will discourage others from acting as Debtor did here. The Court must look at both the severity of the bad act and the severity of the sanction.

In this case Debtor's bad acts were quite severe. Honesty on bankruptcy petitions and schedules is of paramount importance in administering the bankruptcy system. A dishonest debtor can take advantage of the system, defraud his creditors, and mislead the Court. This Court takes dishonesty very seriously, which is why a sanction is necessary in this case.

In determining the sanction needed to deter future bad acts, the Court looks at the unique facts of each case and the particular debtor's ability to pay. Thompson, 165 B.R. at 33; Collins, 250 at 655. Here, Debtor has over a million dollars in secured and unsecured debt. If Debtor had been honest on his petition and schedules, he may have been able to obtain a discharge of a large portion of these debts. Debtor will not, however, receive a discharge. Burbach's adversary resulted in default judgment against Debtor that bars his discharge entirely. Thus,

Debtor still has that large debt to pay. Due to Debtor's dishonesty the Court cannot precisely determine Debtor's income. Even if the Court assumes Burbach's generous predictions of between $150,000 and $260,000 are accurate, Debtor will have some struggle ahead to pay off his debts. Much of that debt is owed to Burbach from the State court judgment. Debtor's lies in bankruptcy already cost him his ability to get bankruptcy relief. In this respect, he has already been punished to a large extent.

Nonetheless, the Court finds, due to the severity of Debtor's conduct, some additional sanction beyond the denial of discharge is warranted. Debtor wasted both this Court's and Burbach's time by lying on his petition and schedules. For his part, Burbach did work that uncovered Debtor's wrongdoing, which merits some compensation. The Court thus finds that Debtor, as the party responsible for violating Rule 9011(b)(3) by submitting false information on his bankruptcy petition and schedules, should be required to pay $10,000 of Burbach's attorney fees. This amount is in addition to the $2,500 awarded on the improper Motion to Convert to Chapter 13. The Court also awards $5,000 for the fees of the expert accountant in this case. The Court finds the $5,000 more than adequate to cover what was necessary for preparing testimony on Debtor's false statements.

## CONCLUSION

**WHEREFORE**, Debtor Jason Wall is ordered to pay creditor Kurt Burbach

$17,500 in sanctions for his violation of Fed.R.Bankr.P. 19011(b)(1) and (3).

Dated and Entered:   February 8, 2019

_____

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE